UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

C.R.C.,

                              Petitioner,

        -against-

GENALO, et al.,

                              Respondents.

Case No. 1:26-cv-02694 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

On April 1, 2026, Petitioner C.R.C. ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of his detention by federal immigration authorities ("Respondents"). Dkt. 1. On April 27, 2026, this Court granted the petition and ordered that the immigration court either hold a bond hearing at which the government bore the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk, or otherwise release Petitioner. Dkt. 20 (the "Order"). Petitioner then received a bond hearing, and the immigration judge ("IJ") denied him bond. Petitioner now moves to enforce the Order, contending that the IJ not only failed to hold the government to its burden of proof at the bond hearing but also shifted that burden impermissibly to him. As a result of this and other deficiencies, Petitioner argues, Respondents have failed to comply with the Order; he seeks immediate release from custody as a remedy and, in the alternative, asks that this Court conduct a new bond hearing. For the following reasons, the Court GRANTS the motion in part and DENIES it in part.

**BACKGROUND**

### I.    The Court's Previous Order

This Court granted Petitioner's habeas petition by oral decision on April 27, 2026, and directed that Petitioner be given a bond hearing. *See* Dkt. 27 ("Habeas Hr'g Tr.") at 33:5-16. On the same day, the Court issued the Order, which reduced to writing the specific parameters for that bond hearing. *See* Order. In particular, the Court required that Respondents "bear[] the burden of proving, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk." *Id.* at 1. The Court further required that, "[i]n determining whether to grant bond, the [IJ] must consider the availability of alternative conditions of release," and that "in determining the amount of any bond imposed, the [IJ] shall consider the Petitioner's ability to pay." *Id.* Finally, the Court ordered that the IJ hold the bond hearing by May 4, 2026. *Id.*

### II.    The Bond Hearing

The IJ held Petitioner's bond hearing on April 30, 2026, *see* Dkt. 24-2 ("Bond Hr'g Tr.") at 1, and opened the proceeding by noting that "[t]he burden is on the government to demonstrate by clear and convincing evidence Respondent is a flight risk or a danger to the community. I'll have to consider alternatives to detention, and there was Petitioner's ability to pay as well," *id.* at 2. The IJ noted that Petitioner had also submitted evidence for the hearing but had done so past the submission deadline; the IJ nevertheless accepted Petitioner's evidence into the record. *See id.* at 2-5. The IJ also heard Petitioner's procedural objections to Respondents' evidence but overruled them, holding that the evidence would remain in the record, albeit with "appropriate weight under the circumstances." *Id.* at 8; *see also id.* at 5-8.

Respondents began their bond argument by pointing to evidence that, as of August 12, 2024, Petitioner was "homeless." *Id.* at 13. "[S]omebody who is homeless," Respondents argued, "presents, or should present the [c]ourt with[] a very grave concern. How is somebody

2

who is homeless going to be expected to appear for [c]ourt?" *Id.* at 14.  Next, Respondents

highlighted Petitioner's "very serious charges in the past," including a purported "conviction for

robbery in the third degree" in 2010.  *Id.*  Respondents argued that Petitioner had allegedly

"struck the complaining witness . . . about the head and face with a bottle multiple times, also

strike [sic] him about the face and body with a closed fist," and thereafter "go[ne] into the

victim's pockets."  *Id.*  "[T]his is not a situation which is minor," Respondents continued; "the

victim lost consciousness, had to go to the hospital, and [Petitioner] has that conviction."  *Id.*

Respondents further pointed to an arrest report for a different alleged crime, dated July 30, 2024.

*Id.*  In that report, a witness stated that Petitioner had "run behind [the complaining victim] with

a knife out, stat[ing], I'm going to kill him.  When the suspect realized police were called,

suspect tossed knife into the bushes."  *Id.*  This arrest apparently resulted in charges filed against

Petitioner, but Respondents conceded that those charges were ultimately dismissed.  *Id.*

Nevertheless, Respondents argued that "[c]ases are dismissed and sealed for all kinds of

reasons," and "[j]ust because a case is dismissed doesn't mean that the act didn't occur."  *Id.*

Respondents also noted that the arrest report referred to "an active warrant out for [Petitioner's]

arrest."  *Id.*  In sum, Respondents argued that Petitioner's "ongoing or longitudinal criminal

history" made him a danger to the community, and that his homelessness and previous arrest

warrant made him a flight risk.  *Id.* at 14-15.

        In response, Petitioner first corrected Respondents regarding his criminal history, noting

that his conviction was for attempted robbery in the third degree, not robbery.  *Id.* at 15.

Petitioner conceded that "attempted robbery is a serious offense and the allegations relating to

that incident are serious," but he stressed that "that criminal incident took place over 15 years

ago, and to this date, that remains [his] only criminal conviction that he's ever had."  *Id.*

3

Petitioner next turned to his 2024 arrest.  He "was accused of assault in the third degree," but "all of the charges in that criminal case were dismissed," and "[t]he only documentation that we have from that case is an arrest report."  *Id.* at 16.  That arrest report, Petitioner further contended, was unreliable: "The allegations that are perhaps the most alarming relating to the knife didn't even come from the complaining witness, as the police report itself states that the complaining witness did not see suspect with a knife.  Unsubstantiated hearsay allegations that were later dismissed by the [c]riminal [c]ourt[,] without more[,] should be given little, if any, weight by this [c]ourt and certainly cannot constitute clear and convincing evidence of danger."  *Id.*

Finally, Petitioner sought to rebut Respondents' flight risk argument by pointing to his "severe rheumatoid arthritis and other medical problems," which not only made flight physically unlikely but also incentivized him to remain in New York to continue receiving treatment and "support services from a variety of service providers."  *Id.* at 17.  Indeed, if he "were to attempt to abscond from his immigration proceedings, he would lose his eligibility for the public benefits and support resources that he depends on."  *Id.*  As to Petitioner's homelessness, Petitioner represented that the Legal Aid Society would "connect him with shelters upon release from detention."  *Id.* at 18.  Lastly, to the extent flight remained a concern, Petitioner suggested that "any such risk could be easily addressed by monetary bond" or certain alternatives to detention.  *Id.*

Respondents, in turn, characterized Petitioner's arguments as "at best fanciful."  *Id.* "[T]he rheumatoid arthritis argument is interesting," Respondents continued, "except that [Petitioner] was arrested on July 30, 2024, for allegedly beating someone and then chasing after them with a deadly weapon, knife.  That doesn't sound like somebody who has a particularly serious impairment[.]"  *Id.* at 19.  Respondents repeated their position that the dismissal of

4

criminal charges "does not necessarily mean that the incident did not occur." *Id.* And Respondents again noted that the arrest report for the 2024 incident "shows[] a warrant out for [Petitioner's] arrest, so the flight risk arguments that counsel advances are equally meritless." *Id.*

The IJ ruled in favor of Respondents. Explaining that "clear and convincing evidence means that there's a firm conviction in the adjudicator's mind that the [Petitioner] is either a flight risk or danger," the IJ held that, "[b]ased upon this record," Respondents had met their burden. *Id.* at 19. First, the IJ "look[ed] at the two arrests" and found that, notwithstanding the fifteen-year gap between them, they demonstrated "an ongoing violent, you know, violent propensity on the part of [Petitioner]." *Id.* "[P]ast conduct does matter," the IJ explained. *Id.* "That's what we have to look at, you know. You know, what's the past conduct? How long ago? How likely is it that it's going to happen again? Is there a pattern that exists here? There is a pattern that exists here." *Id.* The IJ explained that the 2024 arrest report was a "police report that was made in the normal course of business you know, and in this [c]ourt, in bond proceedings, these documents can be given weight as a matter of discretion. Now the burden is higher, but when I look at the record in its totality, I see somebody who is going to get out and is going to continue to be a danger to society. I don't think that there are any alternatives to . . . detaining [Petitioner]. I just — I'm not sure when someone has this propensity and when they have a history of homelessness how this person, how the finding would be mitigated." *Id.*

The IJ also held that Petitioner's rebuttal evidence was insufficient to alter this determination. He noted that Petitioner offered declarations and affidavits from certain individuals but did not call those individuals to testify at the bond hearing, and he explained that such an omission "may permissibly support [an] inference that the witness's testimony would have been adverse." *Id.* at 20. The IJ also rejected Petitioner's argument that "his illness or what have you" and the "programs that he's going to be involved in" would mitigate his danger to the

community. *Id.* "So based upon all those factors," the IJ concluded, "I'll find

[Petitioner] — excuse me, the [g]overnment has demonstrated by clear and convincing evidence

that [Petitioner] is a danger and that there are no alternatives that would mitigate that." *Id.*

## LEGAL STANDARD

A district court lacks jurisdiction to review an immigration court's discretionary

determination denying bond. 8 U.S.C. § 1226(e). However, "[c]laims that the discretionary

process itself was constitutionally flawed are cognizable in federal court on habeas because they

fit comfortably within the scope of § 2241." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d

Cir. 2020) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). Moreover, "[a]s a

general rule, once a federal court has entered judgment, it has ancillary jurisdiction over

subsequent proceedings necessary to vindicate its authority, and effectuate its decrees." *Zeiler v.

Deitsch*, 500 F.3d 157, 170 (2d Cir. 2007) (quoting *Dulce v. Dulce*, 233 F.3d 143, 146 (2d Cir.

2000)); *accord R.R.M.C. v. Decker*, No. 22-cv-02952 (LGS), 2022 WL 4639674, at *3 (S.D.N.Y.

Sept. 30, 2022). Therefore, this Court "retains jurisdiction to review whether [Petitioner] 'has

received the due process to which he is entitled,' [but] this Court does not have jurisdiction to

review any discretionary determination of the [IJ] with respect to the bond determination."

*Roman v. Decker*, No. 20-cv-06752 (AJN), 2021 WL 3173138, at *2 (S.D.N.Y. July 27, 2021)

(alteration adopted) (citations omitted) (quoting *Velasco Lopez*, 978 F.3d at 850); *see also*

*L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 406 (E.D.N.Y. 2025) ("The Court retains jurisdiction

over constitutional questions that arise within IJs' adjudication of bond hearings pursuant to

Section 2241 habeas petitions.").

In other words, while it is not for this Court "to review the hearing evidence de novo,"

*G.F.F. v. Francis*, No. 25-cv-07368 (JGK), 2026 WL 924072, at *3 (S.D.N.Y. Apr. 4, 2026)

(quoting *Arana v. Barr*, No. 19-cv-07924 (PGG) (DCF), 2020 WL 2094098, at *7 (S.D.N.Y.

6

May 1, 2020)), the Court may assess whether that evidence was sufficient, "as a matter of law, [to] establish [a] [p]etitioner's dangerousness [or risk of flight] by clear and convincing evidence," *Fernandez Aguirre v. Barr*, No. 19-cv-07048 (VEC), 2019 WL 4511933, at *6 (S.D.N.Y. Sept. 18, 2019). "The key inquiry is determining whether . . . the [IJ] 'relied upon proof that *could not possibly establish* by clear and convincing evidence — as a matter of law — that [the petitioner] was a danger to the community.'" *Medley v. Decker*, No. 18-cv-07361 (AJN), 2020 WL 1033344, at *2 (S.D.N.Y. Mar. 3, 2020) (quoting *Blandon v. Barr*, 434 F. Supp. 3d 30, 36 (W.D.N.Y. 2020)). "Clear and convincing evidence means something more than preponderance of the evidence and something less than beyond a reasonable doubt." *Jimenez v. Stanford*, 96 F.4th 164, 190 (2d Cir. 2024) (citation modified) (quoting *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985)). "Evidence meets [that] standard if it 'places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are "highly probable,"'" *Vera Punin v. Garland*, 108 F.4th 114, 123 (2d Cir. 2024) (alteration adopted) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)), or "reasonably certain," *Ragbir v. Holder*, 389 F. App'x 80, 84-85 (2d Cir. 2010) (summary order) (citation omitted).

## DISCUSSION

Petitioner argues that the bond hearing failed to comply with the Order, and was constitutionally flawed, because (1) the IJ placed the burden of proof on Petitioner, *see* Br. at 14-15; (2) Respondents' evidence was, as a matter of law, not clear and convincing, *see id.* at 15-23; (3) the IJ failed to meaningfully consider Petitioner's rebuttal evidence, *see id.* at 23-25; and (4) the IJ failed to consider alternatives to detention, *see id.* at 25-27. The Court addresses these arguments in turn.

## I.    Exhaustion

First, however, as a threshold matter, Respondents contend that Petitioner's motion should be denied as improper, because he must exhaust his administrative remedies by appealing the IJ's decision to the BIA before seeking "habeas relief" in this Court.  Opp. at 18; *see also id.* at 18-21.  The Court disagrees.  Petitioner is not seeking "habeas relief," as such: His motion is not a "suit," *id.* at 19 (quoting *Reiter v. Cooper*, 507 U.S. 258, 269 (1993)), or a "habeas petition," *see id.* at 19-20 n.5 (citing various cases in which courts have found a "habeas petition" premature for failure to exhaust), but rather a motion to enforce the Court's previous order.  Exhaustion does not apply to such a motion.  *See Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (declining to require exhaustion before considering petitioner's motion to enforce habeas order, and explaining that "exhaustion principles preclude[] the court from considering new constitutional claims based on a court-ordered bond hearing," but not "an inquiry into whether the government complied with a prior order issuing a conditional writ of habeas corpus"); *accord Gutierrez Cupido v. Barr*, No. 19-cv-06367, 2020 WL 103477, at *3 (W.D.N.Y. Jan. 9, 2020) ("[T]he [c]ourt disagrees that a petitioner must seek exhaustion before moving to enforce a judgment.").  The cases Respondents cite on exhaustion are therefore inapposite, as they pertain to habeas petitions brought by noncitizens challenging the constitutionality of their bond hearing, not motions seeking to enforce a habeas remedy already granted.  *See, e.g.*, *Torres v. Decker*, No. 18-cv-10026 (VEC), 2018 WL 6649609, at *4 (S.D.N.Y. Dec. 19, 2018) (staying habeas petition challenging bond determination "until the BIA disposes of [p]etitioner's pending bond appeal"); *Paz Nativi v. Shanahan*, No. 16-cv-08496 (JPO), 2017 WL 281751, at *3 (S.D.N.Y. Jan. 23, 2017) (denying habeas petition challenging bond determination because petitioner "is required to exhaust available administrative review

before filing a petition for habeas corpus in this [c]ourt"); *see* Opp. at 19 & n.5 (citing these cases and several others in same context).

Therefore, no exhaustion is required here, and the Court proceeds to the merits of Petitioner's motion to enforce.

## II.    The IJ Did Not Place the Burden of Proof on Petitioner

Petitioner first argues that the IJ "functionally placed the burden [of proof] on [him]" at the bond hearing and paid "little more than lip service" to the Order's allocation requirement. Br. at 14-15.  In support, Petitioner points to one comment the IJ made regarding Petitioner's rebuttal evidence, *see id.* at 14; *see also* Bond Hr'g Tr. at 20 (IJ advising Petitioner that "these documents alone aren't sufficient to demonstrate, you know, what it is that you're trying to show here, that [Petitioner] is not a danger because of his illness or what have you, or that there are programs that he's going to be involved in . . . or that he even has a place to live"), and further argues that the IJ "discount[ed]" Petitioner's letters of support because Petitioner did not call their drafters as witnesses, Br. at 15.

This comment and discretionary determination do not demonstrate, or even suggest, burden-shifting.  Rather, Petitioner's decision to put on a rebuttal case — even though the burden of proof rested solely with Respondents — invited the IJ to evaluate and comment on the strength of that case, and to weigh the submissions it comprised.  The IJ's commentary on Petitioner's rebuttal case came, appropriately, only after his determination that Respondents had carried their burden of proof.  *See* Bond Hr'g Tr. at 19-20 (first finding that Respondents "ha[d] established by clear and convincing evidence [that] [Petitioner] is a danger to the community going forward"; then noting that Petitioner submitted "numerous documents" written by various individuals who had not "been proffered as . . . witness[es] to testify"; and then finding that the documents, in any event, were not "sufficient to demonstrate . . . that [Petitioner] is not a

danger"). The IJ did not shift the burden of proof to Petitioner by finding that his rebuttal case was unsuccessful. *Cf. Booth v. First Reliance Standard Life Ins. Co.*, No. 24-cv-03927 (KPF), 2026 WL 861640, at *12 (S.D.N.Y. Mar. 30, 2026) ("Plaintiff submitted evidence and arguments in her internal appeal and before this [c]ourt . . . . These arguments and evidence were sufficient to meet her burden, and the [c]ourt's rejection of [the] [d]efendant's counterarguments and contrary interpretations does not improperly shift that burden onto [d]efendant."); *Upper Crust Prod. Co. v. Pillsbury Co.*, 132 F. App'x 396, 397 (2d Cir. 2005) (summary order) ("The District Court did not improperly shift the burden of proof merely by noting that appellants presented no credible evidence to rebut the inference of [certain] facts."); *United States v. Aquart*, 912 F.3d 1, 28-29 (2d Cir. 2018) (explaining that, in the context of criminal trial summations, "a prosecutor certainly cannot shift the burden of proof to a defendant, [but] he can argue the lack of trial evidence to support an argument urged by the defense" (citations omitted)).

Therefore, the Court finds that the IJ complied with the Order's burden allocation requirement.

### III.    Respondents' Evidence Was Not Insufficient as a Matter of Law

Petitioner next argues that "no reasonable factfinder could find that" Respondents' evidence was sufficiently clear and convincing. Br. at 15. He contends that the 2024 arrest report relating to his dismissed and sealed arrest is "an uncorroborated and hearsay document" that is, therefore, "plainly inadmissible," *id.* at 15; *see also id.* at 15-20, and that Respondents' remaining evidence "was constitutionally insufficient to establish dangerousness," *id.* at 20; *see also id.* at 20-23. These arguments are unavailing.

#### A.    The IJ Properly Considered the 2024 Arrest Report

As a general matter, "the federal evidentiary rules do not apply in immigration proceedings." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 78 (2d Cir. 2018). Instead, the

immigration court's own procedural rules apply, *see* 8 C.F.R. § 1003.12, and at a bond hearing an IJ may consider "*any* information that is available to the [IJ] or that is presented to him or her by the [noncitizen] or [government]," *id.* § 1003.19(d) (emphasis added).  Thus, "immigration judges are permitted to assess 'the totality of a detainee's prior criminal history, including arrests and unarraigned charges, in determining danger to the community.'"  *Banegas v. Decker*, No. 21-cv-02359 (VEC), 2021 WL 1852000, at *4 n.4 (S.D.N.Y. May 7, 2021) (quoting *Vargas v. Davies*, No. 15-cv-03525 (ER), 2016 WL 3044850, at *4 (S.D.N.Y. May 27, 2016)); *see also Reid v. Decker*, No. 19-cv-08393 (KPF), 2020 WL 996604, at *12-13 (S.D.N.Y. Mar. 2, 2020) (granting habeas petition and ordering that the petitioner receive a bond hearing, but noting that, at that hearing, the IJ "may consider the [petitioner's] conduct underlying [his] criminal charges, even if the charges did not result in a conviction"); *Medley*, 2020 WL 1033344, at *3 (finding that IJ permissibly relied on "criminal complaints and accompanying police reports" alleging that petitioner "engaged in violent conduct toward others," even though the IJ "was aware that [petitioner] was not convicted of all the charges against him").

That is what the IJ did here.  Respondents offered the 2024 arrest report as evidence that Petitioner was arrested "for allegedly beating someone and then chasing after them with a deadly weapon," and the IJ viewed that arrest as "rais[ing] serious concerns" and "indicat[ive] [of] an ongoing violent . . . propensity."  Bond Hr'g Tr. at 19.  It is true that "courts in this circuit caution against giving substantial weight to police reports," but, even so, "there is no bright line rule precluding an IJ from basing a dangerousness determination on a police report."  *Portillo Melara v. Tellez*, No. 26-cv-01453 (AMD), 2026 WL 1146054, at *6 (E.D.N.Y. Apr. 28, 2026); *accord Sterling v. Bondi*, No. 25-cv-02122, 2026 WL 1746537, at *14 (D. Conn. June 17, 2026).  Petitioner cites multiple "binding" cases from the BIA and various courts of appeals that, he contends, "plainly foreclosed" the IJ's consideration of the arrest report at the bond hearing.  Br.

11

at 19; *see id.* at 17-19.  None of those cases addresses bond hearings, though; rather, each

concerns an immigration judge's discretionary determination regarding other forms of relief at

other immigration proceedings.[1]  The procedural rules that govern immigration court bond

hearings — and permit the IJ to consider "any information" submitted — do not govern those

other proceedings.  8 C.F.R. § 1003.19(d); *see id.* § 1003.19 (titled "Custody/bond").

Petitioner's appeals to the Federal Rules of Evidence, *see* Br. at 15-16, and "[t]he due process

test for admissibility of evidence in a *deportation* hearing," *id.* at 17 (emphasis added) (quoting

*Felzcerek*, 75 F.3d at 114), are unhelpful here for the same reason: Neither applied in his Court-

ordered bond hearing.  Indeed, even in federal criminal proceedings at which a district court

"considers whether to release [a defendant] on bail or otherwise," the Federal Rules of Evidence

do not apply.  Fed. R. Evid. 1101(d)(3); *see also United States v. Ferranti*, 66 F.3d 540, 542 (2d

Cir. 1995) ("To order detention [before trial], the district court must find, after a hearing, that the

government has established the defendant's dangerousness by clear and convincing evidence.

The rules of evidence do not apply in a detention hearing." (citation omitted)); 18 U.S.C.

---

[1] *See Felzcerek v. I.N.S.*, 75 F.3d 112, 114 (2d Cir. 1996) (appeal of decision denying application for voluntary departure); *In re Arreguin De Rodriguez*, 21 I&N Dec. 38, 39 (B.I.A. 1995) (appeal of decision denying relief from exclusion); *In re Sotelo-Sotelo*, 23 I&N Dec. 201, 201 (B.I.A. 2001) (appeal of decision denying cancellation of removal); *Matter of D. Rodriguez*, 28 I&N Dec. 815, 815 (B.I.A. 2024) (same); *Padmore v. Holder*, 609 F.3d 62, 64 (2d Cir. 2010) (appeal of BIA decision vacating grant of application for cancellation of removal); *Moore v. Barr*, 819 F. App'x 11, 12 (2d Cir. 2020) (summary order) (appeal of BIA decision affirming removal); *James v. Mukasey*, 522 F.3d 250, 251 (2d Cir. 2008) (same); *Toomer v. Att'y Gen. United States*, 810 F. App'x 147, 148 (3d Cir. 2020) (summary order) (appeal of BIA decision denying adjustment of status); *Avila-Ramirez v. Holder*, 764 F.3d 717, 719 (7th Cir. 2014) (appeal of BIA decision denying relief from removal); *Maurice v. Bondi*, 154 F.4th 15, 17 (1st Cir. 2025) (appeal of BIA decision denying adjustment of status and cancellation of removal); *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 709 (6th Cir. 2004) (appeal of BIA decision denying adjustment of status); *Chuil Chulin v. Zuchowski*, No. 21-cv-00016, 2021 WL 3847825, at *7 (N.D. Cal. Aug. 27, 2021) (challenge to denial of U visa petition).

§ 3142(f) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at [a pretrial detention] hearing.").

Therefore, the IJ did not commit a constitutional violation by admitting, considering, or relying upon the 2024 arrest report.

### B.    Respondents' Remaining Evidence Was Not Insufficient as a Matter of Law

The Court also disagrees with Petitioner's arguments concerning the remaining bases for the IJ's decision.  Petitioner misconstrues the IJ's determination in stating that it "rest[ed] . . . on [Petitioner]'s 15-year-old arrest and subsequent conviction."  Br. at 20.  To the contrary, the IJ found that Petitioner's earlier arrest and conviction, paired with the allegations from the 2024 arrest report, constituted clear and convincing evidence of "a pattern" and "an ongoing . . . violent propensity."  Bond Hr'g Tr. at 19.  Petitioner's disagreement with that determination (even if this Court shared in that disagreement), does not give rise to a constitutional violation.  Indeed, Petitioner cites numerous cases requiring that IJs "consider" the temporal proximity of past crimes, *see* Br. at 20-21, and the record here demonstrates that the IJ did just that before finding that Petitioner's past crime nevertheless contributed to a pattern of behavior, *see* Bond Hr'g Tr. at 19 (acknowledging that "the two arrests" were "15 years apart," but noting that "past conduct does matter").

Petitioner also argues that the IJ found merely that Petitioner's "homelessness 'may' affect [his] stability," rather than finding definitively that it made him a danger to the community, and that this error also creates a constitutional violation.  Br. at 22 (quoting Bond Hr'g Tr. at 20); *see also* Bond Hr'g Tr. at 19-20 (IJ: "I'm not sure when someone has this propensity and when they have a history of homelessness how this person, how the finding would be mitigated. . . .  [F]rom the record that we have from the Government, homelessness I think may have some impact on [Petitioner]'s ability to stabilize his situation.").  The Court need

not reach this argument, because even assuming that the IJ's determination of dangerousness based on homelessness was constitutionally inadequate, the bond determination would still be constitutionally valid based on the IJ's findings as to Petitioner's criminal history.

Therefore, the Court finds that Respondents' evidence was not, as a matter of law, insufficient, and Petitioner's motion to enforce the Order on that ground is denied.

## IV.    The IJ Sufficiently Considered Petitioner's Rebuttal Evidence

Petitioner next argues that the IJ "wholly ignored [his] documentary evidence on rebuttal," in particular his medical records and various "statistics" concerning recidivism, likelihood of adherence to bond requirements, and efficacy of alternatives to detention.  Br. at 24.  The record does not support this argument.  Indeed, before hearing the parties' arguments, the IJ went off the record with the express purpose of reviewing Petitioner's rebuttal evidence, which he submitted *after* the filing deadline had passed, and which the IJ ultimately accepted into the record over Respondents' objection.  Bong Hr'g Tr. at 2-4; *see also id.* at 5 ("And [c]ounsel, we're going to take a short break because I have to look at the documents now because you've got over 100 pages, so, you know, it's, like, you know, what am I supposed to do, just guess what you have in there?").  As discussed, moreover, the IJ did review Petitioner's rebuttal evidence and held that it was insufficient to overcome Respondents' clear and convincing evidence of dangerousness.  Indeed, he specifically noted Petitioner's "letter from [his] social worker at Legal Aid," a "declaration from a Caitlin Weber," and an "affidavit from . . . [Petitioner]'s sister," and he held that "these documents alone aren't sufficient to demonstrate, you know, what it is you're trying to show here, that . . . [Petitioner] is not a danger

because of his illness or what have you, or that there are programs that he's going to be involved in." *See id.* at 20.[2]

### V.    The IJ Did Not Sufficiently Consider Alternatives to Detention

Notwithstanding the foregoing analysis, the Court will grant Petitioner's motion to enforce because the IJ failed to sufficiently consider the availability of alternatives to detention.

The consideration of alternatives to detention is a crucial component of an individualized and constitutionally adequate bond hearing, because "detainees' criminal records may vary widely, as may their present-day physical conditions and capacities"; accordingly, "[f]or some, restrictions on liberty short of detention may suffice to protect the public." *D.C. v. Noem*, 825 F. Supp. 3d 309, 326 (S.D.N.Y. 2026).  In keeping with this principle, "numerous courts in this district have found that failing to consider alternatives to detention when assessing dangerousness violates an individual's due process rights." *Beltran Marroquin v. Genalo*, No. 24-cv-06376 (MMG), 2025 WL 3241161, at *4 (S.D.N.Y. Nov. 20, 2025) (collecting cases). Courts in this Circuit routinely find that an IJ has failed to adequately consider alternatives to detention when the record reflects only the IJ's conclusory statements that he has considered them, without explaining which he considered and why they would be inadequate. *See R.R.M.C.*, 2022 WL 4639674, at *5 (granting motion to enforce where IJ decision "addresse[d] alternatives to detention in conclusory terms" and "d[id] not mention any specific alternatives or explain why any are insufficient"); *Fernandez*, 2019 WL 4511933, at *5, *8 (granting motion to enforce where IJ decision "[wa]s utterly [de]void of any discussion of whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger

---

[2] Petitioner notes that "[i]t is unclear what 'programs'" the IJ meant.  Br. at 14 n.3.  The Court understands the IJ to be referring to Petitioner's contentions that Legal Aid would "connect him with shelters upon release from detention," and that he was "receiv[ing] extensive support services from a variety of service providers."  Bond Hr'g Tr. at 17, 18.

that [p]etitioner posed to the safety of the community"); *G.F.F.*, 2026 WL 924072, at *3, *5

(granting motion to enforce in part where IJ "failed to consider expressly any alternatives to

detention," other than "geolocation monitoring, which the IJ dismissed as ineffective in cursory

fashion"); *Mendoza v. Noem*, No. 26-cv-01260 (LJL), 2026 WL 1470652, at *6, *9 (S.D.N.Y.

May 26, 2026) (granting motion to enforce where IJ "stated without explanation or elaboration

that in making his bond determination as to dangerousness, he did not find that any alternatives

to detention would be appropriate" (cleaned up)); *Espinoza v. Maldonado*, No. 26-cv-01007

(RER), 2026 WL 1623056, at *3, *5 (E.D.N.Y. June 5, 2026) (granting motion to enforce where

IJ's conclusory statements concerning propriety of alternatives to detention, such as "I don't

think they're sufficient," were "the extent of the analysis"); *Thomas v. Searls*, No. 20-cv-06362,

2021 WL 358128, at *7, *9 (W.D.N.Y. Jan. 4, 2021) (granting motion to enforce where IJ

"provided no hint as to what 'alternative methods' she may have considered," which "ma[de] it

impossible to determine whether she complied with the bond order").

　　Here, the IJ's brief reference to alternatives to detention "fits comfortably within this

well-established body of caselaw." *Mendoza*, 2026 WL 1470652, at *6.  The IJ explained that,

"when I look at the record in its totality, I see somebody who is going to get out and is going to

continue to be a danger to society.  I don't think that there are any alternatives . . . to detaining

[Petitioner]."  Bond Hr'g Tr. at 19.  He further explained that "[t]here is a pattern [of violent

behavior] that exists here. . . .  I think we [inaudible] evidence that [Petitioner] is a danger and

there are no alternatives to release."  *Id.* at 19-20; *see also id.* at 20 ("[Respondents] ha[ve]

demonstrated by clear and convincing evidence that [Petitioner] is a danger and that there are no

alternatives that would mitigate that.").  Missing from these statements is any particular

alternative the IJ considered or an explanation of why any such alternative would be insufficient

to protect the community.  While the IJ may well have concluded that there were no alternatives

16

to detention that would mitigate Petitioner's dangerousness to the community, the IJ did not explain the basis for this conclusion. Moreover, it is unclear, from the record before this Court, how Respondents could have "demonstrated by clear and convincing evidence" that alternatives to detention could not "mitigate" Petitioner's dangerousness, given that Respondents did not once mention alternatives to detention in their arguments before the IJ. *See generally* Bond Hr'g Tr.

Respondents concede that the IJ did not "specifically discuss" any alternative to detention on the record here, but they argue that he did not need to, because "he is presumed to have considered all of the evidence in the record." Opp. at 11 n.2 (citing *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006)). Respondents cite no authority providing that such a presumption applies in the context of a bond hearing ordered by a district court. In *Chen*, the Second Circuit was reviewing "asylum and withholding of removal determinations[, which] require intensive factual inquiries that appellate courts are ill-suited to conduct." *Chen*, 471 F.3d at 333. In that context, the Second Circuit explained that "an IJ [need not] expressly parse or refute on the record each and every one of a petitioner's purported explanations for testimonial inconsistencies or evidentiary gaps." *Id.* at 336 n.17. The Court does not require that level of findings here, either. Indeed, "the issue is not the length or persuasiveness of the IJ's reasoning; it is the apparent lack of any meaningful consideration at all as to whether there were alternatives to detention that would protect the public." *Mendoza*, 2026 WL 1470652, at *7. The record here may well support that there are no alternatives to detention given Petitioner's history and characteristics, his lack of stable housing, and the lack of adequate means to address dangerousness, but such findings must be made by the IJ to comport with due process.

Therefore, the Court finds that the IJ's decision did not adequately consider alternatives to detention and, on that basis, grants Petitioner's motion to enforce.

17

## VI.    Remedy

The remaining question is the proper remedy.  Petitioner seeks immediate release from custody and asks, in the alternative, that this Court conduct a new bond hearing.  Br. at 27-30. Having found no constitutional violation in the IJ's determination that Petitioner is a danger to the community, however, the Court will not order his immediate release from custody.  And the Court adheres to its initial reasoning that this case does not involve "atypical circumstances" requiring that this Court conduct a bond hearing itself.  Habeas Hr'g Tr. at 23:13-19 (quoting *D.C.*, 825 F. Supp. 3d at 325).  The Court will instead remand the matter to the IJ for a supplemental bond hearing, at which the IJ must make explicit findings, on the record and based on clear and convincing evidence, that Petitioner presents a danger to the community that cannot be mitigated by reasonably available alternatives to detention.  *See, e.g.*, *R.R.M.C.*, 2022 WL 4639674, at *5 (requiring same).  To be clear, while Petitioner may identify such alternatives at the bond hearing, the burden of proof remains on Respondents to establish by clear and convincing evidence that those alternatives are insufficient to mitigate danger to the community.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to enforce the Order is GRANTED in part and DENIED in part.  Petitioner's request for immediate release and for this Court to hold a new bond hearing are denied.  By **August 14, 2026**, the immigration court must hold another bond hearing for purposes of determining what, if any, alternatives to detention would effectively mitigate Petitioner's danger to the community without unduly restricting Petitioner's liberty; if the immigration court does not hold such a hearing by that date, Respondents must release Petitioner.

Respondents shall file a letter by **August 17, 2026**, certifying that the bond hearing has been held in accordance with this Court's order and reporting on the hearing's outcome.

Dated: August 7, 2026
      New York, New York

SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge